## STATE v. NEGRO ABSOLOM.

Court of Quarter Sessions.  April, 1808.

*Wells' Notebook, 366.*

*Horsey,* Attorney General.   *Cooper* and *Wells* for defendant.

The only point which arose in this case was respecting the effect of a confession made by the defendant; some of the company who were endeavouring to extort a confession from him having told him that it "would be better for him to confess." The law respecting confession was cited from Leach 249, 2 East 659, 658. The Court did not regard the confession as made under circumstances similar to those mentioned in the authorities. Verdict guilty.

After conviction a question arose as to the judgment which ought to be pronounced. The defendant was indicted as a "free Negro." The Act of Assembly, 25 Geo. II, 1 Del.Laws 296, prescribed the punishment of larceny. The legislature in 1807, 4 Del. Laws 108, substituted or directed free Negroes convicted of larceny to be adjudged to be sold for a term of years. During the existence of this Act the larceny was committed, but before the trial this Act had been declared (4 Del.Laws 221, *anno* 1808) to lie repealed, made null and void. The Court desired the counsel on both sides to look into the question and to argue the point.

The cases submitted to the Court without argument were the following. Statutes introductive of a new law, penned in the affirmative, do always repeal former statutes concerning the same matter as implying a negative, 19 Vin.Abr. 512, 1 Show. 423, Plowd.Comm. 113, 206, 4 Co. 59, Show.Par. 175, 3 P.Wms. 6, 1 Ld. Raym. 96, 3 Term. A statute which introduces a new law and inflicts a new punishment, it must be followed; but where an Act of Parliament inflicts a new punishment for an old offence at common law, it remains an offence still punishable as it was before the Act, 19 Vin.Abr. 518, pl. 76, 1 Hawk.P.C. 169, s. 6, 2 Hawk.P.C. 302.

If then the common law punishment was not taken away by any of the Acts of Assembly, the next inquiry is, what was that punishment? Our ancient Saxon laws, says Blackstone, nominally punished theft with death, if above the value of twelve pence;

**34**

but the criminal was permitted to redeem his life by a pecuniary ransom, 4 Bl.Comm. 237. But in the ninth year of Henry I this power of redemption was taken away, and all persons guilty of larceny above the value of twelve pence were directed to be hanged; which law continues in force to this day, 4 Bl.Comm. 237. The next inquiry which is to be made respects the benefit of clergy—is it of common law or statute original. The clergy claimed under the canon law an exemption from trial by the temporal courts. The temporal judges, however, denied it to the inferior clergy, which gave rise to Statute of 25 Edw. III c. 4 which, reciting "that the prelates had grievously complained that secular clerks, as well chaplains as other monks, and other people of religion had been drawn and hanged by award of the secular judges, in prejudice of the franchise of holy church," does enact, "that all manner of clerks as well secular as religious, etc. shall freely enjoy the privilege of holy church." It seems by a favorable interpretation of this statute, which universally prevailed soon after it was made, not only those actually admitted into some inferior order of the clergy, but also those who were never qualified to be admitted into orders (which was tried by putting them to read a verse) have been taken to have a right to this privilege. 2 Hawk.P.C. 474, s. 4, 5.

The Court pronounced no opinion. The defendant's counsel agreed that the words "free negro" should be stricken out of the indictment, and the Court adjudged the defendant to be whipped, considering him as a slave, and that the Court of Quarter Sessions had concurrent jurisdiction with the two justices of peace. See *State v. Tyre, postea.*